RELATED - DDJ

FULL NAME
CLIFFORD C. LOYER
COMMITTED NAME (if different)
AT-075393-7 UNIT 8
FULL ADDRESS INCLUDING NAME OF INSTITUTION
ATASCADERO STATE HOSPITAL
P.O. BOX 7001 ATASCADERO, CA 93423
PRISON NUMBER (if applicable)

FILED
CLERK, U.S. DISTRICT COURT
JUL 14 2023
CENTRAL DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD CHAUN LOYER<br>PLAINTIFF,<br>v.<br>DR. JEFFREY DAVIS<br>DEFENDANT(S). | CASE NUMBER<br>2:23-cv-06051-FWS-RAO<br>*To be supplied by the Clerk*<br><br>**CIVIL RIGHTS COMPLAINT PURSUANT TO** *(Check one)*<br>☑ 42 U.S.C. § 1983<br>☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☑ Yes ☐ No

2. If your answer to "1." is yes, how many? NUMEROUS

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:
Plaintiff CLIFFORD CHAUN LOYER

Defendants ~~DR. JEFFREY DAVIS~~

b. Court

c. Docket or case number

d. Name of judge to whom case was assigned

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?)

f. Issues raised:

g. Approximate date of filing lawsuit:

h. Approximate date of disposition

**B. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☐ Yes ☑ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes ☑ No

   If your answer is no, explain why not NO APPARENT INSTITUTIONAL GRIEVANCE IS PRESENT.

3. Is the grievance procedure completed? ☐ Yes ☑ No

   If your answer is no, explain why not NONE APPARENT.

4. Please attach copies of papers related to the grievance procedure.

**C. JURISDICTION**

This complaint alleges that the civil rights of plaintiff CLIFFORD CHAUN LOYER
(print plaintiff's name)

who presently resides at ATASCADERO STATE HOSPITAL 93423,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
ATASCADERO STATE HOSPITAL
(institution/city where violation occurred)

on (date or dates) 7/11/23 (Claim I), ________ (Claim II), ________ (Claim III).

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant JEFFREY DAVIS (full name of first defendant) resides or works at
ATASCADERO STATE HOSPITAL 93423 (full address of first defendant)
DOCTOR OF PSYCHIATRY (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual ☑ official capacity.

Explain how this defendant was acting under color of law:
I TOLD HIM MY TRUTHS WHICH HE PERCEIVES AS DELUSIONS FRAUDULENTLY.

2. Defendant ALEJANDRO (full name of first defendant) resides or works at
ATASCADERO STATE HOSPITAL 93423 (full address of first defendant)
STAFF / TECHNICIAN (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

3. Defendant ________ (full name of first defendant) resides or works at
________ (full address of first defendant)
________ (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

4. Defendant ______________________________ resides or works at
(full name of first defendant)

______________________________
(full address of first defendant)

______________________________
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

______________________________

______________________________

5. Defendant ______________________________ resides or works at
(full name of first defendant)

______________________________
(full address of first defendant)

______________________________
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

______________________________

______________________________

**D. CLAIMS***

**CLAIM I**

The following civil right has been violated:

4TH, 5TH, & 6TH AMENDMENT RIGHTS VIOLATED WITH HIM FRAUDULENTLY CLAIMING ME INCOMPETENT TO STAND TRIAL WITH AN UNSPECIFIED SCHIZOPHRENIC DISORDER AND OTHER PSYCHOTIC DISORDER AND ANTISOCIAL DISORDER, DELIBERATELY, BEFORE I'M EVEN ARRAIGNED TO PREVENT ME FROM DEMANDING TRIAL IN PROPIA PERSONA, AND POSSIBLY SECURING A DISMISSAL DUE TO LACK OF EVIDENCE, UNDER P.C. §995(a)(b).

WHEN THREATS DIDN'T WORK, THIS WAS SAID, "YOU LOOK A LIL BIT ITALIAN, MAYBE SICILIAN, HOW'D YOU LIKE TO GO ON A TRIP TO PALERMO, THEN ROME?" ALSO, WHEN MY FILINGS WERE READ, "I DIDN'T DO IT! YOU DON'T KNOW ANYTHING ABOUT ME!" SCAM ARTISTS.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

ON 5/30/2023, MY ARRIVAL AT ATASCADERO, I AM DIAGNOSED WITHOUT EVEN SEEING A DOCTOR. (ENCLOSED PAPERWORK). THIS IS A FRAUD ON ME AND THE GOVERNMENT. CAUGHT RED HANDED. PLEASE SEE NO. 1 AND NO. 4 ON PAGE 1 of 8. YOU MAY NOT DIAGNOSE A PATIENT WITHOUT MANY PSYCHIATRY EVALUATIONS UNLESS YOU ARE MALPRACTICING AND COMMITTING FRAUD. ALSO, STAFF HASN'T BEEN MAKING "FUN OF ME," THAT'S CHILDISH LANGUAGE NOT TO BE ATTRIBUTED TO ME, THEY'VE BEEN THREATENING MY LIFE. "BADA BING, BADA BOOM, BADA BOOM, BADA BING," "OH, A WISEGUY EH." "RIBBIT, RIBBIT, PUT A FROG (BOMB) IN YOUR CELL," "FUCK YOUR LIFE, FUCK YOUR WIFE, FUCK YOUR MOTHER IN HER ASS, YOU FUCKIN' SNITCH," "DON'T YOU HEAR ME TALKIN'?", "DISAPPEARED LIKE HOUDINI." ALEJANDRO, A STAFF MEMBER RELAYED, "DON'T SAY MY NAME, DON'T SAY MY NAME, DON'T SAY MY NAME, OR THAT'S ALL SHE WROTE."

**If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

DEMAND FOR TRIAL IN AN UNLIMITED ACTION IN THE MILLIONS OF DOLLARS - AMEN.

THANK YOU FOR FALSELY REPORTING DOCTOR.

THEN DISMISSAL OF ALL CHARGES AGAINST ME.

X 7·11·23
(Date)

Clifford C. Layer
(Signature of Plaintiff)

Clifford Chaun Loyer
AT-075393-7 Unit 8
Atascadero State Hospital
P.O. Box 7001
Atascadero, C.A.
93423

To The Honorable Magistrate Judge:

I have handwritten my Complaint and found that I may typewrite in the Library. I am generally angry by these Doctors who persist in finding a diagnosis with out observing a patient over a period of time to adequately assess them as genuinely incompetent to stand trial and instead branding suspected males and females as if they were cattle being driven through a system that you can't object to.

I'm supposed to know all the components of the courtroom and take several tests for competency over an uncertain period of time preventing me from prosecuting my own case in pro per.

I move the court to grant me Habeas Corpus and allow my suit of law to proceed to dispute resolution.

Dated:Tuesday,July 11,2023 Signed: Clifford C. Loyer

# CALIFORNIA DEPARTMENT OF STATE HOSPITALS - TREATMENT PLAN

**PATIENT'S NAME:** LOYER, CLIFFORD CHAUN **CASE NUMBER:** 075393-7

**CONFERENCE DATE:** 6/27/2023 **FINALIZED DATE:** 7/5/2023 **FREQUENCY TYPE:** Monthly

**Diagnosis:**

| Priority | DSM Code | DSM Description | Diagnosis Date |
|---|---|---|---|
| 1 | F29. | Unspecified schizophrenia spectrum and other psychotic disorder | 5/30/2023 |
| 2 | F15.20A | Amphetamine-type substance use disorder, Severe | 5/30/2023 |
| 3 | F11.20A | Opioid use disorder, Severe | 5/30/2023 |
| 4 | F60.2 | Antisocial personality disorder | 5/30/2023 |
| 5 | K59.00 | Constipation, unspecified | 5/30/2023 |
| | | GAF: 45 | |

**LEGAL STATUS:**

| Code | Description | Effective Date | End Date |
|---|---|---|---|
| PC1370 | INCOMPETENT TO STAND TRIAL | 3/27/2023 | 3/27/2025 |

**Current Status**

BACKGROUND AND REASON FOR ADMISSION

Mr. Clifford Chaun Loyer is a 38-year-old (DOB:10/08/1984) "white" male who was admitted to DSH-A on 05/30/2023 pursuant to PC1370.

STRENGTHS AND OVERALL FUNCTIONING

STRENGTHS: Mr. Loyer is active during the day, socializes with his peers, and has been attending treatment groups. He structures exercise into his daily routine.

OVERALL FUNCTIONING:
(6/13/2023-6/19/2023) pt is alert and oriented x4. pt is able to perform his ADLs and other daily task independently and without prompting. pt has had minimal signs of responding since beginning to take his scheduled psych medications. pt is currently a HAS level 3. [Discuss patient's response to nursing interventions identified in Plan of Care/Nursing Care Plans(Focus 1 and 3):] "i dont like it" [Describe interactions with peers and staff:]pt is polite and appropriate in al interactions with peers and staff alike. [Leisure/Recreation participation (list patient's leisure time activities):] watching TV.
(6/7/2023) Mr. Loyer is a new admit to the hospital. On the unit patient currently holds a HAS level I on the unit. Patient requires staff prompting and redirection to follow unit rules and routine. Patient has attempted to refuse scheduled medications but currently on court ordered medications. Unit team and staff will continue to encourage him to be active in his treatment while at DSH-A.

RN PSYCHIATRIC INTERVENTIONS:(5/30/2023-6/28/2023)
Mr. Loyer is a 38-year-old, White, male PC1370 pursuant from LA County. He is currently diagnosed of unspecified schizophrenia spectrum and other psychotic disorder. He is believing police officers are working with mafia and caused harm to his girlfriend, some people around him including staff are making fun of him, and that he is part of a



ADDRESSOGRAPH
Treatment Plan Status: FINAL

**PATIENT NAME:** LOYER, CLIFFORD CHAUN
**PATIENT ID:** 075393-7
**PROGRAM:** VI **UNIT:** 8
**CONFERENCE DATE:** 6/27/2023
**ADMISSION DATE:** 5/30/2023
**PLAN TYPE:** Monthly

certain government protection program. He was observed responding to internal stimuli since his admission. He is angry about being forced medicated despite the education and information provided by staff and clinicians. He is able to his ADLs independently and currently maintains HAS level 3. Though compliant, patient continues to believe that he should not be taking medications. He complies with assessments when necessary. He was receptive when instructed to report any suicidal/homicidal thoughts and when educated about importance of safety in the unit. Patient appears to be getting along well with peers. No social issues noted. He follows staff directions and prompts. No noted episodes of arguing with staff. [Leisure/Recreation participation (list patient's leisure time activities):] movie and popcorn, going out to courtyard, bingo, table games, music listening, watching TV.

SUPPLEMENTAL ACTIVITIES: (6/27/23) Mr. Loyer has been observed socializing with peers, watching television, reading his library book, and attending courtyard breaks during his leisure time. Records indicate that he has attended the following supplemental activities: Music Listening, Table Games, and Unit Informational meeting. He will continue to be encouraged to participate in the supplemental activities offered on the unit.

FAMILY INFORMATION: Patient declined to sign ROI.

RISKS AND STABILIZATION

VIOLENCE RISK (06/02/23): MODERATE
On 06/02/23, utilizing the Violence Risk Screening-10 (V-RISK-10), Mr. Loyer was estimated to be in the MODERATE range of risk for engaging in institutional aggression or violence while housed with DSH-Atascadero in the next 30 days. This rating will be updated in 12 months or earlier as clinically indicated. He has a pending felony charge Driving or taking a vehicle without consent (01/20/23) from Los Angeles County. The records allege that he took a car that was left with the keys in and running, drove it to another location, and was arrested claiming it was his car.
The records and Mr. Loyer's report indicate extensive history of arrests and convictions since age 14 for theft, including "eleven arrests for gang and juvenile" offenses and adult history of attempted murder, possess weapon at school, assault by prisoner, escape jail/ect. With felony: force/violence, force/assault with a deadly weapon: GBI likely, participate in criminal street gang, resist peace officer, cause death/SBI, inflict corporal injury on spouse/cohabitant, prisoner manufacture weapon, battery on emergency personnel as well as substance related offenses and violations of supervised release. Mr. Loyer reported his juvenile arrests included property crimes, "strong armed robbery, gang battery, theft" and "many [crimes]" since age 12 that he was not arrested for, and involving "Mexican gang" membership and activities, specifically "Los Crooks in Santa Ana" since his early teens. At age 18, he was reportedly involved in a gang territorial dispute, was assaulted, and was arrested for attempted murder and assault (in December 2002). He was eventually convicted of the "two assault with deadly weapons, street terrorism, and gang enhancements" in 2004 and sentenced to 11 years. He reported serving the full 11 years and participating in gang activities and violence while in CDCR. He reported he was paroled in 2013 and completed parole in 2015. Subsequently, he was arrested and eventually convicted of domestic violence/corporal injury involving his wife in or after 2016. He was sentenced to "eight years and eight months" and was released in February 2022. He acknowledged cutting off his GPS tracker while still on parole.
As of the date this assessment was completed, Mr. Loyer's last incident of aggression appears to be in 2018, per his report, involving a fight in prison. He stated he initiated a fight due to another inmate's making false claims about him to remove him from the yard. He also reported having "knocked out" the peer during the fight. While Mr. Loyer's report could not be verified, there is no description of violence in the available records from county jail or since his admission to DSH. Of note, the jail records noted an "altercation" on 01/23/23, after which Mr. Loyer complained of being punched in ribs and having rib pain (exam revealed no evidence of fracture). No additional details were available. Mr. Loyer stated he was attacked and hit by the peer while he was handcuffed and thus could not fight back. He denied retaliation or any subsequent aggression.
Given Mr. Loyer's reported history of engaging in violence impulsively and apparently while experiencing active psychotic symptoms, his ongoing delusional ideation, and lack of prescribed psychotropic medications at this time, the above risk rating was given. With increased psychiatric stability, his risk of violence will likely decrease.
Factors that increase Mr. Loyer's risk for violence include mental and emotional states (delusions, paranoia, irritability, impulsivity, agitation, disorganization), history of crime and violence, any active substance use, external triggers (perception of being threatened/persecuted/followed, interpersonal difficulties), no current psychotropic medications, as well as limited insight into his presentation, and likely future stressors. Preventative factors that may mitigate his risk for aggression include motivation to proceed with his case (be discharged, return to community, pursue litigation),

current compliance with treatment, cooperative conduct, as well as being in a hospital environment with 24/7 staff monitoring.

Mr. Loyer appears to have a history of aggressive behaviors, though his history and triggers are not well known. Thus, the management of his risk for aggression should focus on psychiatric stabilization, compliance with medications, and provision of treatment and coping skills for mental illness and distress, as well as staff monitoring. He may benefit from attending Aggression Reduction group in order to learn about possible triggers to anger and violence as well as ways to manage those. At this time, enhanced observation, in addition to what is provided on admission unit, is not recommended. Mr. Loyer may display aggressive behavior should he feel threatened/perceive a threat (toward self or loved ones) likely based in his delusions (paranoia, persecutory) or when irritable, possibly due to medication noncompliance (when or if he is prescribed any). He may be encouraged to use his room and coping skills to calm down when agitated or angry. Should he demonstrate increase in agitation and/or problematic behaviors (threatening, increased volatility or hostility, yelling and cursing), or if otherwise clinically indicated, enhanced observation and reassessment of his risk may be necessary.

SELF HARM/SUICIDE RISK (06/02/23): LOW

On 06/02/23, utilizing the Columbia Suicide Severity Rating Scale (C-SSRS), Mr. Loyer was estimated to be in the LOW range of risk for engaging in self-injurious or suicidal behavior while housed with DSH-Atascadero. While his chronic risk of suicide ideation may be elevated due to historical factors, he appears less likely to engage in such behaviors in a hospital setting given his current report, lack of known suicide attempts in institutional settings, and endorsement of hope and future oriented focus. The records indicate one suicide attempt and possible history of cutting (per jail records, "six or seven years ago"). Mr. Loyer described the suicide attempt consistent with the jail record, noting on 07/16/22 he stabbed himself with a knife in the chest, puncturing his lung and nearly hitting his heart, and was hospitalized (on 07/18/22 for "two weeks") pursuant to a 5150 and 5252 hold. He also reported an interrupted attempt on 11/29/22, attempting to stab himself but his "girlfriend" reportedly stopped him, and self-aborted attempt earlier on that same day via jumping off a building. He provided a convoluted, difficult to follow, and delusional narratives in regard to the causes of his suicidal ideation and attempts. He indicated he was "under a lot of stress" as "the mafia [was] following [him], obviously trying to frame [him] again." He also believed he was being drugged ("they were dosing me") as the hospital drug test reportedly "tested [positive] for every drug on the panel" while he was only reportedly using fentanyl at the time. The most recent interrupted attempt reportedly followed his discovery that his girlfriend, reportedly a police officer, was "brutally beaten and raped by mafia" and in the pursuit of the perpetrators his identify or location was somehow revealed compromising his safety.

Mr. Loyer endorsed past suicidal ideation (SI) in the past, stated he has been depressed for past "six years" and experienced SI due to concerns about his and his family's safety ("they made it seem they were going to kill my family, trying to induce suicide"). However, he denied any current or recent thoughts or intent on harming or killing himself, expressing hope, optimism, and future oriented thinking (wanting to be discharged, resolve legal case, pursue other litigation). Specifically, Mr. Loyer reported, "I fell good right now…I am not longer in combat situation, I'm safe, out of harm's way" as of "May 29th." He acknowledged this situation can change, however also indicated optimism with a smile, "I know what my future holds." He endorsed willingness to inform staff of any burgeoning ideation, stressors, or significant changes in mood. Thus, given his current statements, presentation since admission, and hospital environment with staff monitoring, the risk for suicide appears low at this time. However, should Mr. Loyer begin to experience increased distress or stress related to his delusional ideation (loss of hope, fear for safety or family's safety), a reassessment of his risk would be warranted at that time.

Critical factors that could impact Mr. Loyer's risk for suicide/self-harm include suicide attempt in the last year (July 2022, and interrupted attempt in November 2022), symptoms of mental illness (e.g., delusions, hallucinations, depressed mood), impulsivity, history of violence, and active substance use. Key or protective factors that could mitigate his risk of suicide/self-harm include the presence of goals for the future (litigation, release to the community), as well as compliance with treatment, family contact, existing coping skills (self-advocacy, writing, engagement in legal process), and placement in 24-hour locked psychiatric facility. Mr. Loyer is currently not prescribed psychotropic medications, however should those be prescribed in the future, his medication adherence may be considered a protective factor. Additionally, his current endorsement of grandiose ideation appears protective, though highly malleable to change with any change in his symptoms.

Recommendations for Management: Much of his suicidality appears influenced by mental illness, associated distress, and active substance use, therefore treatment of mental illness will be the primary focus on assisting him in attaining psychiatric stability and maintaining safety. He may be encouraged to attend Mental Health Wellness groups to learn about his mental illness, facilitate insight, and to develop appropriate coping skills. Mr. Loyer may be at risk of

experiencing SI or engaging in self-injurious behaviors when experiencing increased and distressing psychotic symptoms (paranoia, feeling unsafe, fearing for his family's safety), depressive symptoms (feeling hopeless about his future), unsafe or when emotionally overwhelmed. At this time, enhanced observation is not considered necessary related to suicidality. Should he begin to display or complain of increased stressors (paranoia, hopelessness, feeling overwhelmed) and/or report SI, enhanced observation and reassessment of his risk may be necessary.

SECURITY/ESCAPE RISK: He has no escape history. (36) LOW SERA scored on 025/30/2023

SPECIAL INCIDENT REPORTS: Mr. Loyer has had no behavioral incidents since his admission to DSH-A on 5/30/2023.

CURRENT INTERVENTIONS
Sponsor Group (twice a week)

As of this seven-day treatment team, Mr. Loyer is enrolled in 1 hours of treatment groups. There was no available group attendance data due to his recent admission to DSH-A.

Refer to Nursing Care Plans for further expected outcomes/interventions.

Psychiatric Treatment Goals: (6/27/2023)
Competency restoration through medication management and improved compliance, participation with the treatment plan, and increased participation in competency-oriented group activities and services. Long-term goal is to discharge to home county as restored to competency so as to be able to meaningfully participate in his legal proceedings.

**Discharge Planning**

COURSE OF HOSPITALIZATION

Patient was sent here to learn how to cooperate with his lawyer in preparation for a court trial.

Discharge Criterion One: Pass the Revised Competency Assessment Instrument: Failed on 06/02/23, anticipated completion within 30-60 days
Discharge Criterion Two: Pass Mock Trial: n/a
Discharge Criterion Three: Pass Clinical Staffing: Anticipated completion within 30 days of passing Criterion 1
Discharge Criterion Four: Pass Forensic Staffing: Anticipated completion within 30 days of passing Criterion 3

BARRIERS TO PROGRESS:
Factual Understanding:
Mr. Loyer's factual understanding was not fully evaluated due to his presentation with extensive delusional and illogical narratives that clearly impact his rational understanding and ability to reasonably cooperate with counsel. Based on the limited discussion and previous records, however, his factual understanding of his charge and legal process is unlikely to be a current barrier. He was able to describe past charges, subsequent legal proceedings, and outcomes in a likely factually accurate manner. He appeared to have sufficient understanding of his basic plea options and approaches to legal defense. However, a full assessment of his factual understanding is recommended with anticipated resolution of current psychotic symptoms.

Rational Understanding:
As noted above (and in more detail in the APA), Mr. Loyer offered narratives were overinclusive and elaborate, though often not directly relevant to the questions, and with loosened, illogical, and tangential nature. He presented with extensive grandiose, persecutory, and paranoid delusional beliefs that were directly impacting his perception of his current legal situation and case as well as considerations regarding legal strategy. He expressed delusional ideation regarding various judges, law enforcement, and his status (i.e., describing himself as "the chief witness" and in "federal witness protection"). He reported his investigation, pending litigation, and anticipating upcoming testimony on case of "corruption" involving police "making false arrest, falsely [finding defendants] incompetent, falsely [placing inmates] in CCCMS, state hospitals," with involvement of the "Triple Siciliana judge, [name of a judge] is in the Gambino family" and is "making money off it" in Hollywood court. Thus, Mr. Loyer was unable to consider his case or defense strategy in a reasonable, logical, or rational manner due to his current psychotic symptoms.

Consult with Counsel:
As the time of evaluation, Mr. Loyer was incapable of rationally assisting his counsel in the conduct of a defense. While he expressed strong motivation for trial competency restoration and discharge, his psychotic symptoms directly impacted his reasoning and communication abilities. His understanding of his situation was significantly affected by his extensive delusional beliefs, making rational or logical discussion difficult. He expressed significant concerns about his attorney, noting she was "a scam artist" and "part of a sting" indicating her involvement in "helping them to send people to Hollywood court" for profit as part of "a conspiracy." He similarly expressed beliefs that his arrest was "a trick" and was not legitimate based on his grandiose and persecutory delusions. Despite attempts to reality test and provide feedback, Mr. Loyer perseverated on his beliefs and offered elaborative narratives to "prove" his statements. Similarly, he lacked insight into his illness and need for psychotropic medications. Overall, his presentation and report appear consistent with the descriptions during his initial competency evaluations in jail, and suggested no improvement over time.

PLAN FOR RETURN TO THE RELEVANT COUNTY JAIL

Patient is expected to return to be housed at Los Angeles County Jail upon discharge. He will likely require continued mental health services in order to maintain a level of functioning appropriate for court. The unit social worker will identify the patient's specific mental health needs upon discharge. Patient has not yet passed the RCAI. His treatment team will continue to encourage him to study his 1370 material. He has been provided a trial competency workbook. Unit staff will assist him in preparing for his next competency evaluation.

| | | | | |
|---|---|---|---|---|
| **FOCUS # 1.1 Psychiatric and Psychological** | | | | |
| Sponsor Group | | | | |
| **IPOC** | | | | |
| **OBJ #** | **OBJECTIVE** | | **STATUS** | **TARGET** |
| 1.1.1 | Mr. Loyer will develop and maintain a therapeutic alliance with his care providers to encourage and increase his engagement in the therapeutic community and treatment | | Not Met | 9/14/2023 |
| **INT #** | **INTERVENTIONS** | **Active Tx** | **Disc. Reason** | **Disc. Date** |
| 1.1.1.1 | Sponsor Group 1 \| KRONENBERGER, MATTHEW \| PT / LVN \| Thu - 20:30 \| Enrolled<br>Sponsor Group 1 \| PINTOR, CRISTINO, R \| PT / LVN \| Wed - 09:00 \| Enrolled | ☑ | | |
| **FOCUS # 1.2 Psychiatric and Psychological** | | | | |
| To learn how to manage one's psychiatric symptoms while in the hospital, jail, court, and during legal proceedings. | | | | |
| **IPOC** | | | | |
| **OBJ #** | **OBJECTIVE** | | **STATUS** | **TARGET** |
| 1.2.1 | When prompted by staff, he will identify at least 3 symptoms and 2 specific coping strategies he can use to effectively manage symptoms of his mental illness while at DSH-A. | | Not Met | 9/14/2023 |
| **INT #** | **INTERVENTIONS** | **Active Tx** | **Disc. Reason** | **Disc. Date** |
| 1.2.1.1 | Unit staff will assist him in managing active psychiatric symptoms, encourage him to attend groups offered on the unit, and will monitor the effectiveness of psychiatric medications. | ☐ | | |
| **FOCUS # 3.1 Dangerousness and Impulsivity** | | | | |
| He has a history of engaging in aggressive behaviors and would benefit from learning coping skills to effectively manage his aggression. | | | | |
| **IPOC** | | | | |
| **OBJ #** | **OBJECTIVE** | | **STATUS** | **TARGET** |
| 3.1.1 | When prompted by staff, he will identify at least 2 triggers for his aggression and 2 ways to implement coping strategies to reduce his risk of violence. | | Not Met | 9/14/2023 |
| **INT #** | **INTERVENTIONS** | **Active Tx** | **Disc. Reason** | **Disc. Date** |
| 3.1.1.1 | Unit staff will encourage positive social interactions with peers and staff and will encourage him to attend groups offered on the unit. | ☐ | | |
| **FOCUS # 6.1 Medical, Health and Wellness** | | | | |
| HA, arthralgia | | | | |
| **IPOC** | | | | |
| **FOCUS # 6.2 Medical, Health and Wellness** | | | | |
| dyspepsia | | | | |

| | | | | |
|---|---|---|---|---|
| **IPOC** | | | | |
| **FOCUS # 6.3 Medical, Health and Wellness** | | | | |
| constipation | | | | |
| **IPOC** | | | | |
| **FOCUS # 6.4 Medical, Health and Wellness** | | | | |
| HTN | | | | |
| **IPOC** | | | | |
| **FOCUS # 7.1 Legal** | | | | |
| Mr. Loyer requires competency restoration treatment following being found incompetent to stand trial. | | | | |
| **IPOC** | | | | |
| **OBJ #** | **OBJECTIVE** | | **STATUS** | **TARGET** |
| 7.1.1 | He will pass the CAT, Clinical Staffing, and Forensic Staffing. | | Not Met | 9/14/2023 |
| **INT #** | **INTERVENTIONS** | **Active Tx** | **Disc. Reason** | **Disc. Date** |
| 7.1.1.1 | Staff will encourage him to attend on-unit trial competency groups. | ☐ | | |
| **FOCUS # 10.1 Leisure and Recreation** | | | | |
| Mr. Loyer has a Hx of depression and would benefit from developing leisure focused coping skill to diminish his depression. | | | | |
| **IPOC** | | | | |
| **OBJ #** | **OBJECTIVE** | | **STATUS** | **TARGET** |
| 10.1.2 | Prior to being seen for his 90 day treatment team meeting, Mr. Loyer will learn and identify at least one leisure focused coping skill that he can use to diminish depression AEB reporting to therapist. | | Not Met | 10/5/2023 |
| **INT #** | **INTERVENTIONS** | **Active Tx** | **Disc. Reason** | **Disc. Date** |
| 10.1.2.1 | Unit Rehabilitation Therapist will provide unscheduled Healthy Living group sessions three times per week and invite patient. | ☐ | | |

CLIFFORD C. LOYER
AT-075393-7 UNIT 8
ATASCADERO STATE PRISON
P.O BOX 7001
ATASCADERO, C.A. 93423

SANTA BARBARA CA 931
12 JUL 2023 PM 2 L

FREEDOM
FOREVER / USA

(3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF C.A.
255 E. TEMPLE ST.
LOS ANGELES, C.A. 90012

Legal Mail

RECEIVED
CLERK, U.S. DISTRICT COURT
JUL 14 2023
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

90012-333299